# EXHIBIT A

STATE OF SOUTH CAROLINA          )    IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF CHARLESTON             )    NINTH JUDICIAL CIRCUIT
                                 )
NUCOR CORPORATION,               )    Case No. _06-CP-10-3954_
                                 )
              Plaintiff,          )
                                 )
       vs.                       )    **SUMMONS**
                                 )    (Jury Trial Demanded)
JOHN BELL and SEVERCORR,         )
                                 )
              Defendants.         )
_____  )

**TO:    THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this

action, a copy of which is hereby served upon you, and to serve a copy of your Answer to the

Complaint on the subscribers at their offices located at 200 Meeting Street, Suite 301, Charleston,

South Carolina 29401, within thirty (30) days after the service hereof, exclusive of the day of such

service; and if you fail to answer the Complaint within the time aforesaid, judgment by default

will be rendered against you for the relief demanded in the Complaint.

J. Walker Coleman, IV
S.C. Bar No. 66196
Email:  walkercoleman@parkerpoe.com
J. W. Nelson Chandler
S.C. Bar No. 68625
Email: nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3601
Email:  williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email:  ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Phone:  704-372-9000
Fax:  704-334-4706

ATTORNEYS FOR PLAINTIFF

October _6_, 2006

Charleston, South Carolina

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |
| NUCOR CORPORATION, | ) | Case No. 06-CP-10-3954 |
| Plaintiff, | ) | |
| vs. | ) | **VERIFIED COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION** |
| JOHN BELL and SEVERCORR, LLC, | ) | (Jury Trial Demanded) |
| Defendants. | ) | |

NOW COMES the Plaintiff, Nucor Corporation ("Nucor"), complaining of Defendants

John Bell ("Bell") and SeverCorr, LLC ("SeverCorr") and would respectfully show unto the

Court as follows:

## PARTIES AND JURISDICTION

1.    Nucor is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business in Charlotte, North Carolina and with operations in

Berkeley County, South Carolina.

2.    Upon information and belief, Bell is a resident and citizen of the State of South

Carolina, Charleston County at 3234 Pignatelli Crescent, Mt. Pleasant, South Carolina.

3.    Upon information and belief, SeverCorr is a limited liability company organized

under the laws of the State of Delaware, with offices located in Columbus, Mississippi.

## FACTUAL ALLEGATIONS

4.    Nucor is headquartered in Charlotte, North Carolina and manufactures steel

products in the United States.  Through its affiliates, Nucor operates facilities in 17 states,

employing over 11,500 persons.  Over the last decade, Nucor expanded its business by opening

up new facilities or acquiring operations in Alabama, Indiana, New York, North Carolina and South Carolina.

5.    Nucor manufactures carbon and alloy steel in bar, sheet and structural forms, steel joists and steel girders, steel deck, cold finished steel, steel fasteners and metal building systems.

6.    Nucor is known for, among other things, its strong emphasis on quality and technological leadership.

## BELL'S EMPLOYMENT WITH NUCOR

7.    For over 18 years, Bell was employed by Nucor in its facilities in various capacities. Nucor hired Bell in 1987 as a melt shop manager at Nucor-Yamato, a joint venture facility of Nucor. Bell was employed in that capacity until 1995 when he became melt shop manager for Nucor's mini-mill facility in Berkeley County, South Carolina ("Nucor-Berkeley").

8.    Bell was involved in the start-up of several Nucor facilities, including Nucor-Berkeley. In connection with those responsibilities, Bell was substantially involved in decisions made at Nucor regarding the design, layout and operation of these new facilities.

9.    Steel making today is a demanding business and requires advanced and efficient techniques and processes to produce sophisticated products to meet the demands of steel customers at the least cost possible in order to obtain profitability. Certain customers demand highly sophisticated products, including value-added steel, that can be made by only certain manufacturers. Mini-mills, such as those of Nucor, have certain manufacturing and cost savings advantages over integrated mills, but also have certain demands and requirements different from integrated mills that must be met through advancement of design and processes.

10.    In an effort to continue to maintain its technological advantage, Nucor, in May 2004, appointed Bell general manager of steelmaking technologies at Nucor. In that position, Bell was given greater responsibilities at Nucor including primary responsibility for supporting

CLT 991324v1

and enhancing existing steelmaking operations throughout Nucor. In addition, Bell was involved in the development of steelmaking technologies. Bell also retained his prior duties and responsibilities as melt shop manager at Nucor-Berkeley.

11.    In his positions with Nucor, Bell became knowledgeable of substantially all of Nucor's operations. Among other things, Bell became knowledgeable of Nucor's: manufacturing processes, procedures and specifications; plant design, specifications and layout; equipment design, specifications and layout; employee information and staffing needs; customer information, including specifications; technological processes for the production of steel products, including thin slab casting; steel product production speeds and quantities; production efficiencies; pricing, costs and other financial data; and research and development projects. In addition, Bell was directly involved in hiring and review processes of Nucor melt shop and some technical employees at the Berkeley facility and in that capacity became knowledgeable and learned of confidential information of Nucor concerning these employees, including their salaries, responsibilities, positions and abilities. All such information is unique and proprietary to Nucor and thus is treated as confidential at Nucor. Most of such information exists as a result of Nucor's substantial investment in its technology and processes.

12.    Bell, as part of his employment with Nucor, led numerous projects at Nucor for the development of new processes, technologies or techniques to improve Nucor's steelmaking capabilities, reduce costs and improve its final product for sale to Nucor's customers. Among other things, Bell was instrumental in creating processes and procedures for using a vacuum degasser in Nucor's Berkeley operations, the only mini-mill to successfully employ a vacuum degasser in the electric arc furnace ("EAF") steelmaking process. Nucor's process for use of the vacuum degasser was developed after considerable time and expense by Nucor, involving numerous efforts of trial and error, and following repeated attempts and failures. Bell is

3

knowledgeable not only of the successful process developed by Nucor, but also of the steps and course not to follow in use of the vacuum degasser, which knowledge has substantial value to Nucor.

13.    Bell also led a team in creating and devising procedures for reducing costs in the manufacture of sheet steel and developing new processes for making better surfaces in sheet steel in a mini-mill environment, including devising new manufacturing processes to improve quality with the CSP caster, one of the most difficult areas to properly operate and control in steelmaking. Among other things, Bell worked directly with Nucor metallurgists for over a year to develop and refine a process of cooling molten steel more slowly to make steel less prone to surface cracking, which has been very costly to Nucor and is highly confidential and proprietary to Nucor.

14.    As part of his responsibilities at Nucor, Bell, for over three months, advised employees of Nucor's Castrip facility ("Castrip") in processes involving the manufacture of sheet steel through thin strip casting. The Castrip facility employs new technology, some of which is patented to Nucor, and all of which involves manufacturing processes which are highly confidential and proprietary to Nucor. Through his involvement at Castrip, Bell learned of confidential and proprietary information concerning the design and layout of the equipment at that facility, manufacturing processes, production costs, and steelmaking output and capacity, among other things, and assisted in developing new processes to improve production and efficiencies.

15.    Each of the projects that Bell led or otherwise assisted in at Nucor are proprietary to Nucor, result from Nucor's considerable expenditure of time, effort and money, and each gives Nucor a competitive advantage over other manufacturers of sheet steel, including manufacturers using electric arc furnaces.

4

16.    Thus, throughout his employment at Nucor, Bell was provided specialized training and opportunities in Nucor's specialized steelmaking which made him intimately knowledgeable about the substantial information and technologies set forth in paragraphs 11-15 above, which is confidential and proprietary to Nucor. This information collectively constitutes Nucor's trade secrets ("Trade Secrets").

17.    Nucor takes reasonable steps to protect its Trade Secrets, including the use of confidentiality and non-disclosure agreements entered into between Nucor and its employees. Bell, during his employment with Nucor, entered into agreements for the protection of Nucor's Trade Secrets and other confidential and proprietary information.

### A.    The First Confidentiality Agreement

18.    In connection with his employment at Nucor, Bell entered an Agreement between Employee and Nucor Corporation for Non-Disclosure of Trade Secrets and Confidential Information by Employee and for the Assignment of Inventions by Employee, dated October 19, 1987 (the "First Confidentiality Agreement") (Exhibit A hereto).

19.    Under the terms of the First Confidentiality Agreement, Bell acknowledged and agreed not to disclose to any other person, or use to Nucor's detriment, any of Nucor's confidential information and trade secrets without the prior written consent of Nucor, and further agreed that his obligations under the First Confidentiality Agreement would continue after the termination of his employment with Nucor. The Confidentiality Agreement provides in pertinent part:

> 1.    The trade secrets and confidential information of Nucor as used herein shall mean, among other things: *plant design, specifications and layout*; equipment design, specifications and layout; product design and specifications; *manufacturing processes, procedures and specifications*; data processing programs; *research and development projects*; marketing, pricing, cost and financial data . . .

2.    The relationship of employer and employee imposes a legal duty on EMPLOYEE *not to disclose to others or use* to EMPLOYEE'S advantage, to the detriment of NUCOR, any of NUCOR'S trade secrets or confidential information, while EMPLOYEE is employed by NUCOR *as well as after such employment ceases* and while such trade secrets and confidential information remain confidential.

## B.   The Second Confidentiality Agreement

20.    In connection with Bell's employment as melt shop manager at Nucor-Berkeley, Bell entered into a second Agreement Between Employee and Nucor Corporation for Non-Disclosure of Trade Secrets and Confidential Information by Employee and for the Assignment of Inventions by Employee, dated November 23, 1999, which is identical to the First Confidentiality Agreement (the "Second Confidentiality Agreement") (Exhibit B hereto). As with the First Confidentiality Agreement, Bell acknowledged and agreed not to use or disclose any of Nucor's confidential information and trade secrets to any other parties without the prior written consent of Nucor.

21.    Bell agreed that his obligations of confidentiality and non-use under the Second Confidentiality Agreement continued after the termination of his employment with Nucor.

## C.   The Third Confidentiality Agreement

22.    In October 2005, Bell entered into another agreement with Nucor, again acknowledging Nucor's confidential and trade secret information and agreeing not to use or disclose such information. Under the terms of the Employee Confidential Information and Assignment Agreement between Bell and Nucor, dated October 29, 2005 (the "Third Confidentiality Agreement") (Exhibit C hereto) (collectively with the prior confidentiality agreements, the "Confidentiality Agreements"), Bell agreed for a minimum of 20 years not to use or disclose Nucor's confidential information, including information concerning:

"[A]ll inventions and all other business, technical and financial information **(including, without limitation, the identity of and information relating to customers or employees)** I develop,

6

learn or obtain during the term of my employment that relate to (i) **the Company and its business**, (ii) the technological process for the production of flat steel products through thin strip casting, and (iii) all confidential information now or hereafter owned by Castrip, LLC."

23.    Bell further agreed that following termination of his employment with Nucor, he would:

> (a) take all reasonable steps and do all things that may be reasonably required by Company from time to time, to keep the Confidential Information, and all documents, materials, media and all other things recording, containing, setting out or making reference to any Confidential Information, under my effective control; (b) promptly notify Company in the event that I become aware of any unauthorized access to, or use or disclosure of, any Confidential Information; and (c) not use, copy or reproduce, nor cause, permit or allow any other person to use, copy or reproduce, any document, material, medium or any other thing, recording, containing, setting out or making reference to any Confidential Information unless otherwise in accordance with this Agreement.

24.    Bell further entered into a non-solicitation agreement with Nucor pursuant to which Bell agreed that for a period of 1 year following his termination, he would not "encourage or solicit any employee or consultant of [Nucor] to leave [Nucor] for any reason (except for the bona fide firing of Company personnel within the scope of my employment)."

25.    The Third Confidentiality Agreement is, by agreement, governed by the laws of the State of Indiana.

## BELL'S RESIGNATION FROM NUCOR

26.    Bell terminated his employment with Nucor on or about March 31, 2006.

27.    By letter dated March 31, 2006, Nucor reminded Bell of his contractual and statutory obligations to Nucor not to use or disclose Nucor's confidential and proprietary information or solicit employees and consultants of Nucor to leave Nucor's employment for any reason (Exhibit D hereto).  Nucor also advised Bell in this letter, that given the nature of the

7

confidential information disclosed to him at Nucor, and his knowledge and involvement with that confidential information during his 18 years of employment with Nucor, any employment of Bell in a similar capacity with another steel manufacturing company would inevitably disclose Nucor's Confidential Information and Trade Secrets.  Bell never objected to this letter.

28.     Nucor conducted an exit interview with Bell on April 1, 2006.

29.     In his exit interview, Nucor again advised and reminded Bell of his confidentiality obligations owed to Nucor, including his "continuing obligation not to disclose or use confidential or proprietary information of Nucor, including but not limited to, information concerning Nucor's processes, techniques, methodologies, formulations, proprietary technologies, costs, pricing, customer requirements and specifications, employee relationships and compensation," and that Nucor considers "its longstanding relationship with its employees and customers to be important assets to the company and have been and will continue to be protected by Nucor."  Bell acknowledged in writing on April 1, 2006, having received such advice from Nucor without reservation or objection (Exhibit E hereto).

30.     Despite voluntarily executing the Confidentiality Agreements, the March 31, 2006 reminder letter to which Bell never objected, and Bell's written acknowledgment on April 1, 2006 that he received without objection a reminder from Nucor regarding his confidentiality obligations to Nucor, Bell nevertheless in apparent blatant and willful disregard of such, misappropriated Nucor's Trade Secrets and confidential information, including substantial proprietary and confidential information contained on Nucor's computer system.  On information and belief, Bell, without Nucor's knowledge or permission and within days of his departure from Nucor Berkeley, downloaded, copied and retained files, data and documents electronically maintained on the computer assigned to him at Nucor, including highly confidential and proprietary information concerning Nucor Berkeley's operations, production, processes,

8

methodologies and personnel. In many cases, Bell deleted this confidential information from the computer assigned to him at Nucor after otherwise copying or transferring such files and data for his own use. The Nucor confidential information downloaded, copied and retained by Bell from Nucor's computer would be of tremendous value and benefit to a competitor of Nucor.

## SEVERCORR

31.     Upon information and belief, SeverCorr, organized in 2004, is a new steel company building a single facility outside of Columbus, Mississippi.

32.     Upon information and belief, SeverCorr's steel facility is intended to be a "next generation steel mill," utilizing all of the latest in technology by blending "new technology with a new way of doing business." SeverCorr's steel mill, which will be a mini-mill similar to Nucor's Berkeley facility, will include a "state of the art melt shop," a thin slab caster, a hot mill, cold mill, and a hot-dip galvanizing line.

33.     SeverCorr's melt shop in the new steel facility is intended to utilize an electric arc furnace with twin ladle metallurgy stations and twin-tank vacuum degassers.

34.     SeverCorr's hot mill in the new steel facility is intended to utilize a compact strip production (CSP) caster.

35.     On information and belief, SeverCorr's mill is designed and intended to manufacture high quality, flat-rolled steel for automotive and appliance applications, and to produce value-added steels. SeverCorr's mill will be similar to, and a direct competitor of, Nucor.

36.     SeverCorr is currently constructing its steel mill in Columbus, Mississippi and hiring employees for the construction and start-up operations.

37.     SeverCorr hired Bell in the position of Executive Vice President and General Manager of Operations. On information and belief, in his new position at SeverCorr, Bell will

CLT 991324v1

be responsible for, or have substantial involvement in, among other things: management of steel making processes; purchasing of raw materials and adoption of processes to minimize costs and maximize efficiencies; implementation of new technologies and processes for steel making; hiring and staffing decisions; decisions regarding plant and equipment selection, layout and design at SeverCorr's facility in Columbus, Mississippi; research and development; marketing and pricing; and customer specifications. Further, on information and belief, in light of the substantial similarities between SeverCorr's and Nucor's mills, including the use of the electric arc furnace, the vacuum degasser and the thin slab caster, and Bell's responsibilities at SeverCorr, Bell has used and disclosed, and/or will inevitably use and disclose, Nucor's Trade Secrets.

38.     In addition, on information and belief, Bell, while employed by SeverCorr, has solicited or encouraged several Nucor employees to resign from Nucor to accept employment at SeverCorr in violation of the his agreements with Nucor, including the Third Confidentiality Agreement.

39.     More specifically, over the last several months, Bell solicited or encouraged Nucor employees, Max A. (Tony) Gurley, Barry Steel and Mark Pole, to leave Nucor for employment at SeverCorr. In soliciting and encouraging these Nucor employees to leave Nucor, Bell used Nucor's Trade Secrets and breached his contractual obligations owed to Nucor.

40.     Upon information and belief, Bell continues to actively solicit and encourage other employees to leave Nucor for employment at SeverCorr.

## FIRST CAUSE OF ACTION
(Misappropriation of Trade Secrets)

41.     Nucor restates and realleges each and every allegation in paragraphs 1 through 40 above.

10

CLT 991324v1

42.    Defendants' conduct as alleged in this Complaint constitutes actual and/or threatened misappropriation of trade secrets pursuant to South Carolina Trade Secrets Act, S.C. Code and Ann. §39-8-10 et. seq. Defendant Bell entered into the Confidentiality Agreements with Nucor pursuant to which he agreed not to disclose or use Nucor's confidential information concerning, among other things, plant design, product and equipment design and specifications, manufacturing processes, research and development projects, marketing and pricing, costs and financial data, customer and employee information. The Confidentiality Agreements are valid and enforceable contracts.

43.    Bell has a duty not to disclose Nucor's Trade Secrets under the Confidentiality Agreements and SeverCorr has a duty not to use Nucor's Trade Secrets pursuant to S.C. Code §39-8-30.

44.    Bell, through his employment at Nucor as melt shop manager and general manager of steelmaking technologies, had access to and knowledge of Nucor's Trade Secrets, including without limitation:  Nucor's manufacturing processes, procedures and specifications; steel production speeds and quantities; plant design, specifications and layout; equipment design specifications and layout; employee information, including salary, positions, responsibilities and abilities; customer information, including specifications; pricing, cost and financial data of Nucor; technological processes for the production of steel products, including thin slab casting; and research and development projects.  This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, the public or any other person who can obtain economic value from its disclosure or use, and is the subject of efforts by Nucor that are reasonable under the circumstances to maintain its secrecy, and constitutes trade secrets under S.C. Code Ann. §39-8-10.

45.     SeverCorr, through Bell's employment with it as a Executive Vice President and General Manager of Operations, plans to use and disclose, and has used or disclosed, Nucor's Trade Secrets in direct competition with Nucor causing irreparable harm to Nucor.

46.     Bell has misappropriated and used Nucor's trade secrets, including confidential information regarding Nucor's employees and other Trade Secret information, including information contained on Nucor's computer system, to Nucor's detriment and, through his employment as Executive Vice President and General Manager of Operations at SeverCorr, and based on his prior improper conduct, will be unable to refrain from further using or disclosing Nucor's Trade Secrets, including confidential information regarding Nucor's plant and equipment design and layout, technological or manufacturing processes and projects in development, by virtue of the nature of his position at SeverCorr, and thus will cause irreparable harm to Nucor.  SeverCorr, through the employment of Bell, has misappropriated and used and will continue to misappropriate and use Nucor's Trade Secrets and will benefit at the expense of Nucor from the improper use of such Trade Secrets, including obtaining certain unfair advantages such as a head start in its operations by not having to experience the same expensive and time consuming trial and errors that Nucor experienced in, among other things, its use of vacuum degassers in the EAF steelmaking process.

47.     Upon information and belief, SeverCorr's employment of Bell has resulted, and will continue to result, in the threatened and/or actual misappropriation of Nucor's Trade Secrets through SeverCorr and Bell's use and disclosure of Nucor's Trade Secrets.  Defendants' actions as alleged above, will be a continual cause of irreparable harm to Nucor unless SeverCorr and Bell are enjoined from using and/or disclosing Nucor's Trade Secrets, and SeverCorr is enjoined from employing Bell at SeverCorr as Executive Vice President and General Manager of Operations or in any other position to which Bell would have to disclose, or may inadvertently

12

CLT 991324v1

disclose, Nucor's Trade Secrets. If SeverCorr and Bell are not enjoined, Nucor will continue to suffer irreparable harm for which there is no adequate legal remedy. It will be impossible to determine the complete damage that Nucor will sustain from SeverCorr and Bell's use and disclosure of Nucor's Trade Secrets.

48.     SeverCorr and Bell's conduct constitutes threatened and/or actual misappropriation of Nucor's Trade Secrets for which Nucor is entitled to injunctive relief pursuant to S.C. Code Ann. §39-8-50 and the common law.

**SECOND CAUSE OF ACTION**
(Breach of Contract)

49.     Nucor restates and realleges each and every allegation in paragraphs 1 through 48 above.

50.     Bell, upon information and belief, used Nucor's Trade Secrets and confidential information to solicit and hire employees of Nucor for SeverCorr.

51.     Bell's use of Nucor's Trade Secrets and confidential information in soliciting and hiring employees of Nucor for SeverCorr violates and constitutes a material breach of Bell's contractual obligations under the Confidentiality Agreements not to use or disclose Nucor's Trade Secrets and confidential information following his employment with Nucor.

52.     In addition, Bells' use of Nucor's Trade Secrets and confidential information in soliciting and encouraging employees of Nucor to leave Nucor for SeverCorr violates Bell's obligations set forth in the Third Confidentiality Agreement not to solicit or encourage employees of Nucor to leave Nucor's employment for employment at SeverCorr. Bell's foregoing conduct constitutes a material breach of the Third Confidentiality Agreement.

53.     Bell's conduct above also constitutes a breach of the implied Covenant of Good Faith and Fair Dealing which exists in every contract, including the Confidentiality Agreements.

13

54.    Bell's conduct above constitutes material breaches of his contracts with Nucor, including without limitation the Third Confidentiality Agreement, has caused, and will continue to cause irreparable harm to Nucor, and has further directly and approximately caused Nucor damages in an amount to be determined by the trier of fact.

## THIRD CLAIM FOR RELIEF
(Tortious Interference with Relations)

55.    Nucor restates and realleges each and every allegation in paragraphs 1 through 54 above.

56.    Nucor has invested substantial time, effort and money in developing productive relationships, goodwill and business relationship and expectancies with its employees, all of which are subsequently referred to herein as "Nucor's Business Relationship and Expectancies." Nucor had reason to expect, based on past dealings with its employees, that it would continue its productive relationship with its employees, absent Defendants' improper conduct.

57.    SeverCorr, through Bell, has knowledge of Nucor's Business Relationship and Expectancies and Bell and SeverCorr have unlawfully, and without justification, interfered with these relationships to their benefit and Nucor's detriment by intentionally, willfully, and maliciously causing or inducing or attempting to induce Nucor's employees to breach their contracts with Nucor, without justification.

58.    The actions of SeverCorr and Bell as set forth above in this Complaint, including the misappropriation of Nucor's Trade Secrets and confidential information and the interference with Nucor's Business Relationship and Expectancies, constitute wrongful interference with valuable ongoing relationships that Nucor has developed with its employees.

CLT 991324v1

59.    As a direct and proximate result of the interference by SeverCorr and Bell with Nucor's Business Relationship and Expectancies, Nucor has suffered, and will continue to suffer irreparable harm and economic damage in an amount to be determined by the trier of fact.

### FOURTH CAUSE OF ACTION
(Unfair Trade Practices)

60.    Nucor restates and realleges each and every allegation in paragraphs 1 through 59 above.

61.    Pursuant to S.C. Code Ann. §39-5-20 et. seq, SeverCorr and Bell's conduct, as set forth throughout the Complaint, constitutes an unfair method of competition and unfair and deceptive trade acts or practices in the conduct of trade or commerce which have an adverse impact on the public interest being that the conduct has the potential for repetition.

62.    Bell's purpose in taking these damaging and costly actions was to afford SeverCorr an unfair competitive advantage over Nucor, including permitting SeverCorr to benefit at the expense of Nucor from the improper misappropriation, use and inevitable use of Nucor's Trade Secrets, interfering with Nucor's Business Relationship and Expectancies, and gaining the unfair advantage in obtaining a head start in its operations from not having to experience the same trial and errors that Nucor experienced in its use of vacuum degassers in the EAF steelmaking process.

63.    Upon information and belief, Bell is using or intends to use Nucor's confidential and Trade Secret information and the key employees he has solicited away from Nucor, in order to assist SeverCorr in designing and manufacturing products that will directly compete with the products manufactured and produced by Nucor.

CLT 991324v1

64.     Upon information and belief, SeverCorr knew or should have known of Bell's wrongful acts since joining SeverCorr as its Executive Vice President and General Manager of Operations.

65.     Bell's and SeverCorr's conduct and actions have adversely affected the industry for the products at issue and its customers, and have and will continue to have an impact on the public interest.

66.     SeverCorr and Bell's conduct is a willing and knowing violation of S.C. Code Ann. §39-5-20 et. seq and has and will continue to proximately cause damage to Nucor.

67.     Accordingly, pursuant to S.C. Code Ann. §39-5-140, Nucor is entitled to recover from Bell and SeverCorr such damages as it may prove at trial and to have those damages trebled. In addition, Nucor is entitled to recover its reasonable attorneys fees and costs pursuant to S.C. Code Ann. §39-5-140.

## FIFTH CLAIM FOR RELIEF
### (Conspiracy)

68.     Nucor restates and realleges each and every allegation in paragraphs 1 through 67 above.

69.     Upon information and belief, Bell and SeverCorr knowingly and willingly agreed and conspired between themselves to perform the acts plead in this Complaint, and each such Defendant adopted, approved and ratified the wrongful acts of the other.

70.     Over a period of time, upon information and belief, Bell and SeverCorr have engaged in a deliberate course of conduct for the unlawful purpose of causing serious irreparable injury to Nucor's business by misappropriating, using and inevitably using Trade Secrets and confidential information of Nucor about it's business, customers, products, processes, equipment designs and business relationships and soliciting away Nucor's key employees, and have

16

developed manufacturing processes, design strategies and marketing strategies with knowledge of such information to the competitive disadvantage of Nucor.

71.     Upon information and belief, Bell and SeverCorr engaged in a common plan to injure Nucor's business and to secure said business for the benefit of Bell and SeverCorr.

72.     Upon information and belief, Bell and SeverCorr met, communicated, planned and colluded by telephone and/or other means, to bring about their plan to injure Nucor's business.

73.     By their collective actions, Bell and SeverCorr have caused greater harm to Nucor than either could have individually caused, resulting in separate injury to Nucor which would not have occurred but for their concerted actions.

74.     The recurring improper conduct of Bell and SeverCorr has been the actual and proximate cause of Nucor's injuries.

75.     These wrongful acts by Bell and SeverCorr have caused Nucor actual and punitive damages separate from and above the other actual damages alleged herein, and have caused and continue to cause irreparable harm to Nucor for which such legal damages are insufficient.

## SIXTH CLAIM FOR RELIEF
(Conversion)

76.     Nucor restates and realleges each and every allegation in paragraphs 1 through 75 above.

77.     Upon information and belief, Bell and SeverCorr have custody and possession of Nucor's Trade Secrets and other confidential and proprietary information, that is the rightful property of Nucor, and Nucor has the right to presently and immediately repossess its Trade Secrets and other confidential and proprietary information.

17

78.    Bell and SeverCorr have failed to return Nucor's Trade Secrets and other confidential and proprietary information to Nucor.

79.    The actions of Bell and SeverCorr were taken with the intent of permanently depriving Nucor of the use, custody, ownership, and control of its Trade Secrets without paying for same.  The actions of Bell and SeverCorr were willful, wanton, without right or justifiable cause, or the consent of Nucor, and calculated to cause damages to Nucor.

80.    As a direct and proximate result of the actions of Bell and SeverCorr, Nucor has been damaged in an amount to be determined by the trier of fact.

## SEVENTH CLAIM FOR RELIEF
(Unjust Enrichment)

81.    Nucor restates and realleges each and every allegation in paragraphs 1 through 80 above.

82.    Bell and SeverCorr's improper conduct alleged above, including their misappropriation of and use and/or threatened or inevitable use of Nucor's Trade Secrets and confidential and proprietary information, has enabled and will continue to enable SeverCorr to compete unfairly with Nucor, including permitting SeverCorr to gain a head start in its operations from not having to experience the same trial and errors that Nucor experienced in its use of, among other things, vacuum degassers in the EAF steelmaking process.

83.    These actions were wrongful and performed in a malicious manner to harm Nucor and to unjustly enrich Bell and SeverCorr at Nucor's expense.

84.    As a direct and proximate result of Bell and SeverCorr's improper conduct alleged above, Defendant SeverCorr has been unjustly enriched in an amount to be determined by the trier of fact, and Nucor is entitled to the disgorgement of any and all profits, earnings and commissions attributable to Bell and SeverCorr's wrongful actions.

18

## EIGHTH CLAIM FOR RELIEF
(Imposition of Constructive Trust)

85.     Nucor restates and realleges each and every allegation in paragraphs 1 through 84 above.

86.     Bell and SeverCorr have derived profits from their wrongful activities and breaches, as alleged previously herein.

87.     It is proper for this Court to impose a constructive trust on any profits Bell and/or SeverCorr have derived, or will derive, from their wrongful activities and breaches pending the outcome of this litigation.

## NINTH CLAIM FOR RELIEF
(Injunctive Relief)

88.     Nucor restates and realleges each and every allegation in paragraphs 1 through 87 above.

89.     Bell and SeverCorr's misconduct as alleged previously herein is continuing.

90.     If unrestrained, Nucor will suffer irreparable harm for which there is no adequate legal remedy as a result of Bell's breach of the Confidentiality Agreements, Bell's and SeverCorr's tortious interference with Nucor's Business Relationships and Business Expectancies, and Bell's and SeverCorr's use and threatened or inevitable use of Nucor's Trade Secrets. Such harm is irreparable because it is impossible to: (a) determine the impact that could occur from Bell's and SeverCorr's tortious interference with Nucor's Business Relationships and Expectancies, and use and threatened use of Nucor's Trade Secrets; or (b) measure the full extent of monetary damages that Nucor will suffer.

91.     Upon information and belief, unless restrained, Bell will continue his employment with SeverCorr, continue to use and pose a threat to further use Nucor's Trade Secrets, and

19

continue his attempts to hire Nucor employees for SeverCorr, causing additional irreparable harm to Nucor. Therefore, Nucor is entitled to injunctive relief.

**WHEREFORE,** Nucor respectfully prays that:

1.    Pursuant to Rule 65 of the South Carolina Rules of Civil Procedure and S.C. Code Ann. § 39-8-50, the Court enter a preliminary injunction enjoining Bell and SeverCorr and those in active concert or participation with them from:   (1) contacting, soliciting, recruiting or otherwise discussing with current employees of Nucor potential employment at SeverCorr and (2) using, disclosing, or otherwise misappropriating Nucor's Trade Secrets, including without limitation, Nucor's confidential information regarding its employees and information taken by Bell off of Nucor's computer system;

2.    The Court enter a permanent injunction enjoining SeverCorr, including any affiliates, subsidiaries, or parents from employing Bell at SeverCorr (or any of its affiliates, subsidiaries, or parents) in a position as General Manager of Operations or any other position in which Bell would have to, or may inadvertently, disclose Nucor's Trade Secrets, including information concerning Nucor's manufacturing and technological processes, developments and improvements, plant and equipment layout and design and employee relationships;

3.    The Court enter a permanent injunction enjoining Bell from disclosing or using Nucor's trade secrets including (a) information concerning Nucor's manufacturing and technological processes, developments and improvements, including without limitation the use of vacuum degassers in the EAF steelmaking process; (b) information concerning plant layout and design at Nucor; (c) information regarding Nucor's employment relations; and (d) information taken by Bell off of Nucor's computer system;

4.    The Court enter judgment against Bell and SeverCorr in the amount of damages as may be proven at trial including punitive damages;

CLT 991324v1

5.    The Court enter a declaratory judgment on behalf of Nucor on all its claims;

6.    The Court impose a constructive trust to be held for the benefit of Nucor on any and all profits made by SeverCorr attributable, direct or indirectly, to the wrongful actions by Bell and SeverCorr;

7.    The Court treble the compensatory damages awarded with respect to the fourth claim of relief pursuant to S.C. Code Ann. §39-5-140;

8.    The Court award reasonable attorneys fees and costs pursuant to S.C. Code Ann. §39-5-140;

9.    The Court order the return of all documentation of any sort containing trade secrets or proprietary/confidential information of Nucor, and all property of Nucor.

10.    The Court tax the costs of this action against the Defendants;

11.    That a trial by jury be had on all issues triable; and

12.    The Court grant Nucor such other and further relief as it deems just and appropriate.

CLT 991324v1

J. Walker Coleman, IV
S.C. Bar No. 66196
Email: walkercoleman@parkerpoe.com
J. W. Nelson Chandler
S.C. Bar No. 68625
Email: nelsonchandler@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

*OF COUNSEL:*
William L. Rikard, Jr.
N.C. Bar No. 3701
Email:  williamrikard@parkerpoe.com
Eric D. Welsh
N.C. Bar No. 29629
Email:  ericwelsh@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wachovia Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Phone:  704-372-9000
Fax:  704-334-4706

ATTORNEYS FOR PLAINTIFF

October __6__, 2006

Charleston, South Carolina

CLT 991324v1

STATE OF SOUTH CAROLINA          )
                                 )          **VERIFICATION**
COUNTY OF CHARLESTON             )

Ladd Hall, being first duly sworn, deposes and says that: he is the Vice President of Nucor Corporation ("Nucor"); that he has read the foregoing Verified Complaint; and that he believes the facts and allegations of the Verified Complaint to be accurate based on either his own personal knowledge, the inquiry of other employees of Nucor or the review of documentation.

_____
Ladd Hall

SWORN and subscribed to before me
this _5th_ day of OCTOBER, 2006.

_____(L.S.)
Notary Public for South Carolina
My commission expires: _____

**MY COMMISSION EXPIRES MAY 17, 2015**

23

CLT 991324v1

## AGREEMENT BETWEEN EMPLOYEE AND NUCOR CORPORATION
## FOR NON-DISCLOSURE OF TRADE SECRETS AND CONFIDENTIAL INFORMATION BY EMPLOYEE
## AND FOR THE ASSIGNMENT OF INVENTIONS BY EMPLOYEE

................     John R. Bell     ....................................................("EMPLOYEE") and Nucor Corporation, a Delaware corporation, or any of its subsidiaries (collectively referred to as "NUCOR"), in consideration of, (a) EMPLOYEE'S being employed by NUCOR, either in initial employment or in continued employment, and (b) the remuneration paid by NUCOR to EMPLOYEE for EMPLOYEE'S employment, and (c) the payment by NUCOR to EMPLOYEE of the sum of ten dollars ($10.00) the receipt of which is acknowledged, do hereby confirm, acknowledge and agree as follows:

1. The trade secrets and confidential information of NUCOR as used herein shall mean, among other things: plant design, specifications and layout; equipment design, specifications and layout; product design and specifications; manufacturing processes, procedures and specifications; data processing programs; research and development projects; marketing, pricing, cost and financial data; and which have not been made available to the public by NUCOR;

2. The relationship of employer and employee imposes a legal duty on EMPLOYEE not to disclose to others or use to EMPLOYEE'S advantage, to the detriment of NUCOR, any of NUCOR'S trade secrets or confidential information, while EMPLOYEE is employed by NUCOR as well as after such employment ceases and while such trade secrets and confidential information remain confidential;

3. EMPLOYEE shall maintain in secrecy and confidence and shall not disclose or divulge any of NUCOR'S trade secrets or confidential information, of which EMPLOYEE is or may be informed by reason of EMPLOYEE'S employment with NUCOR, to any other person without the prior written consent of the President or a Vice President of Nucor Corporation;

4. EMPLOYEE has the opportunity to become acquainted with various developments and methods relating to NUCOR'S business, and understands that NUCOR is desirous of acquiring the entire right, title and interest in and to certain inventions conceived or made by EMPLOYEE, either solely or jointly with others, in the course of EMPLOYEE'S employment and for a period of one (1) year after the termination thereof;

5. EMPLOYEE shall assign and hereby does assign to NUCOR, its successors and assigns, the entire right, title and interest in and to inventions which EMPLOYEE may make during the period of EMPLOYEE'S employment by NUCOR, or its predecessors or successors in business, and for a period of one (1) year after the termination or cessation of said employment, which EMPLOYEE has made or conceived or may hereafter make or conceive, either solely or jointly with others, (a) in the course of EMPLOYEE'S employment, or (b) with use of NUCOR'S time, material, or facilities and relating to any subject matter which EMPLOYEE'S work for NUCOR is or may be concerned, or (c) relating to any problems arising in or out of NUCOR'S business of which EMPLOYEE may have been or may become informed by reason of EMPLOYEE'S employment;

6. EMPLOYEE shall disclose said inventions promptly to NUCOR and shall execute, acknowledge, and deliver all further papers, including applications for patents and specific instruments of assignment as may become necessary to obtain patents for said inventions in this and all foreign countries, and shall vest title thereto in NUCOR, its successors or assigns, and shall do all other things necessary to the end that NUCOR'S right in and to said inventions may be secured without charge to NUCOR but at its expense;

7. This Agreement shall not obligate NUCOR to continue to employ EMPLOYEE as the execution hereof is one of the conditions of EMPLOYEE'S employment, nor shall the termination of EMPLOYEE'S employment release EMPLOYEE from any obligations hereunder, provided, however, that time actually spent by EMPLOYEE after the cessation of EMPLOYEE'S employment in carrying out this Agreement at NUCOR'S request shall be paid for by NUCOR at a reasonable rate;

8. If at any time NUCOR should waive its rights due to any breach of any of the provisions of this Agreement, such waiver is not to be construed as a continuing waiver of other breaches of the same or other provisions of this Agreement;

9. This Agreement cancels any and all prior agreements and understandings between NUCOR and EMPLOYEE with relation to the subject matter of this Agreement, and shall be amended only in a writing signed by both EMPLOYEE and the President or a Vice President of Nucor Corporation; and

10. This Agreement shall be binding upon EMPLOYEE'S personal representatives.


IN WITNESS WHEREOF, the parties hereby set their hands, this     19th day of ...October...     19 87 .

_____
(Nucor Corporation, by its President or a Vice President)

_____
(EMPLOYEE)

19-2/1280

# nucor steel
A Division of NUCOR Corporation
NUCOR STEEL – BERKELEY

Post Office Box 2259    Mt. Pleasant, SC 29465-2259

No. C057490

57490

PAY ***10 DOLLARS AND 00 CENTS

| DATE | AMOUNT |
|---|---|
| 10/08/99 | 10.00 |

VOID AFTER 90 DAYS

005120

TO

JOHN R. BELL
3234 PIGNATELLI CRESCENT

MT. PLEASANT, SC    29464

NON NEGOTIABLE

TWO SIGNATURES

THE BACK OF THIS CHECK CONTAINS AN ADDITIONAL WATERMARK

SEAFIRST BANK
P.O. BOX 3977
SEATTLE, WA 98104

⑈057490⑈ ⑆125000024⑆ 13935 804⑈

| | Date | Invoice Number | Gross Amount | Discount | Deductions | Net Amount |
|---|---|---|---|---|---|---|
| | 6/01/99 | 06/01/99 | 10.00 | .00 | | 10.00 |
| | Check Number | 57490 | 10.00 | .00 | | 10.00 |

# nucor steel
A Division of NUCOR Corporation

P.O. Box 2259    Mt. Pleasant, SC 29465-2259

No. C057490

## AGREEMENT BETWEEN EMPLOYEE AND NUCOR CORPORATION
### FOR NON-DISCLOSURE OF TRADE SECRETS AND CONFIDENTIAL INFORMATION BY EMPLOYEE AND FOR THE ASSIGNMENT OF INVENTIONS BY EMPLOYEE

John R. Bell ......................................................................... ("EMPLOYEE") and Nucor Corporation, a Delaware corporation, or any of its subsidiaries (collectively referred to as "NUCOR"), in consideration of, (a) EMPLOYEE'S being employed by NUCOR, either in initial employment or in continued employment, and (b) the remuneration paid by NUCOR to EMPLOYEE for EMPLOYEE'S employment, and (c) the payment by NUCOR to EMPLOYEE of the sum of ten dollars ($10.00) the receipt of which is acknowledged, do hereby confirm, acknowledge and agree as follows:

1. The trade secrets and confidential information of NUCOR as used herein shall mean, among other things: plant design, specifications and layout; equipment design, specifications and layout; product design and specifications; manufacturing processes, procedures and specifications; data processing programs; research and development projects; marketing, pricing, cost and financial data; and which have not been made available to the public by NUCOR;

2. The relationship of employer and employee imposes a legal duty on EMPLOYEE not to disclose to others or use to EMPLOYEE'S advantage, to the detriment of NUCOR, any of NUCOR'S trade secrets or confidential information, while EMPLOYEE is employed by NUCOR as well as after such employment ceases and while such trade secrets and confidential information remain confidential;

3. EMPLOYEE shall maintain in secrecy and confidence and shall not disclose or divulge any of NUCOR'S trade secrets or confidential information, of which EMPLOYEE is or may be informed by reason of EMPLOYEE'S employment with NUCOR, to any other person without the prior written consent of the President or a Vice President of Nucor Corporation;

4. EMPLOYEE has the opportunity to become acquainted with various developments and methods relating to NUCOR'S business, and understands that NUCOR is desirous of acquiring the entire right, title and interest in and to certain inventions conceived or made by EMPLOYEE, either solely or jointly with others, in the course of EMPLOYEE'S employment and for a period of one (1) year after the termination thereof;

5. EMPLOYEE shall assign and hereby does assign to NUCOR, its successors and assigns, the entire right, title and interest in and to inventions which EMPLOYEE may make during the period of EMPLOYEE'S employment by NUCOR, or its predecessors or successors in business, and for a period of one (1) year after the termination or cessation of said employment, which EMPLOYEE has made or conceived or may hereafter make or conceive, either solely or jointly with others, (a) in the course of EMPLOYEE'S employment, or (b) with use of NUCOR'S time, material, or facilities and relating to any subject matter which EMPLOYEE'S work for NUCOR is or may be concerned, or (c) relating to any problems arising in or out of NUCOR'S business of which EMPLOYEE may have been or may become informed by reason of EMPLOYEE'S employment;

6. EMPLOYEE shall disclose said inventions promptly to NUCOR and shall execute, acknowledge, and deliver all further papers, including applications for patents and specific instruments of assignment as may become necessary to obtain patents for said inventions in this and all foreign countries, and shall vest title thereto in NUCOR, its successors or assigns, and shall do all other things necessary to the end that NUCOR'S right in and to said inventions may be secured without charge to NUCOR but at its expense;

7. This Agreement shall not obligate NUCOR to continue to employ EMPLOYEE as the execution hereof is one of the conditions of EMPLOYEE'S employment, nor shall the termination of EMPLOYEE'S employment release EMPLOYEE from any obligations hereunder, provided, however, that time actually spent by EMPLOYEE after the cessation of EMPLOYEE'S employment in carrying out this Agreement at NUCOR'S request shall be paid for by NUCOR at a reasonable rate;

8. If at any time NUCOR should waive its rights due to any breach of any of the provisions of this Agreement, such waiver is not to be construed as a continuing waiver of other breaches of the same or other provisions of this Agreement;

9. This Agreement cancels any and all prior agreements and understandings between NUCOR and EMPLOYEE with relation to the subject matter of this Agreement, and shall be amended only in a writing signed by both EMPLOYEE and the President or a Vice President of Nucor Corporation; and

10. This Agreement shall be binding upon EMPLOYEE'S personal representatives.

IN WITNESS WHEREOF, the parties hereby set their hands, this ........ day of .... Nov. 23 ............19 77 ...

_____        _____
(Nucor Corporation, by its President or a Vice President)        (EMPLOYEE)

# EMPLOYEE CONFIDENTIAL INFORMATION AND ASSIGNMENT AGREEMENT

The following confirms an agreement between me ( John Bell ), and Nucor Corporation, a Delaware corporation (the "Company"), which is a material part of the consideration for my employment by Company:

1.      I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with Company. I will not violate any agreement with or rights of any third party. I have not retained anything containing any confidential information of a prior employer, whether or not created by me. I have not retained anything containing any confidential information of any other third parties except that acquired within the scope my employment or otherwise on behalf of the Company, and fully disclosed by me to the Company.

2.      Company shall own all right, title and interest (including patent rights, copyrights, trade secret rights, and other intellectual property rights throughout the world) relating to any and all inventions and any and all improvements to existing technology (whether or not patentable), works of authorship, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, (collectively "Inventions") that are created by me during my employment which relate to the business of the Company, and I will promptly disclose all Inventions to the Company. I hereby make all assignments necessary to accomplish the foregoing. I shall further assist Company, at Company's expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce, and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint Company and its agents as attorneys-in-fact to act for and in my behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me. If I wish to clarify that something created by me prior to my employment that relates to Company's actual or proposed business is not within the scope of this Agreement, I have listed it on an Appendix A attached hereto. If I use or disclose my own or any third party's confidential information or intellectual property when acting within the scope of my employment or otherwise on behalf of Company, Company will have, and I hereby grant Company, to the extent of my ownership or right to license therein a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and license to exploit and exercise all such confidential information and intellectual property rights.

3.      I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to (i) the Company and its business, (ii) the technological process for the production of flat steel products through thin strip casting, and (iii) all confidential information now or hereafter owned by Castrip, LLC, collectively constitute "Confidential Information." I will hold in confidence and not disclose or, except within the scope of my employment, use all Confidential Information during the term of my employment hereunder, and thereafter for a period of twenty (20) years or until such specific Confidential Information is voluntarily made readily publicly available, whichever is longer. However, I shall not be obligated under this paragraph with respect to information I can document is or hereafter has become readily publicly available through a voluntary act without breach of an obligation to keep confidential. Upon termination of my employment, I will promptly return to Company all Confidential Information (including all copies) however stored including without limitation that on PDA and computer media, except

CHAR\609862_1

that I may keep my personal copies of (i) my compensation records, (ii) materials distributed to shareholders generally (iii) and this Agreement. I also recognize and agree that I have no expectation of privacy with the respect to Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice.

4.    I will during the term of my employment hereunder and following termination thereof: (a) take all reasonable steps and do all things that may be reasonably required by Company from time to time, to keep the Confidential Information, and all documents, materials, media and all other things recording, containing, setting out or making reference to any Confidential Information, under my effective control; (b) promptly notify Company in the event that I become aware of any unauthorized access to, or use or disclosure of, any Confidential Information; and (c) not use, copy or reproduce, nor cause, permit or allow any other person to use, copy or reproduce, any document, material, medium or any other thing, recording, containing, setting out or making reference to any Confidential Information unless otherwise in accordance with this Agreement.

5.    Until one year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment).

6.    I agree that I will not engage in any activity that is in any way competitive with the business of the Company, and I will not assist any other person or organization in competing or in preparing to compete with any business of the Company, during the term of my employment with the Company (whether or not during the business hours), and to the extent permitted by applicable laws, for the lesser of (i) five (5) years after termination of my employment with the Company, its successors, its affiliates and Castrip LLC and its licensees, or (ii) so long as and to the extent the Company, its successor, its affiliates and/or Castrip LLC and/or its licensees carries on the business of the Company in the United States and other countries where the Company, its successor, its affiliate and/or Castrip LLC and/or its licensees then carries on such business and/or attempt to license such business. For the purpose of this paragraph, "business of the Company" shall mean activities that involve the thin strip casting of steel, processes, equipment, supplies or services for thin strip casting of steel, and marketing of products made by thin strip casting of steel. I understand that I will not be prohibited from working in a competitive business if my work does not relate to or involve the manufacture, marketing, sale or distribution of thin strip cast steel, or equipment, supplies or services for its making. Notwithstanding the foregoing, I will not disclose or use any Confidential Information at any time, unless and until the Confidential Information becomes widely available in the public domain without breach of an obligation to maintain such information confidential.

7.    I agree that this Agreement is not an employment contract for any particular term and that I have the right to resign and Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause. In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and as an employee of Company, I understand I have obligations to Company which are not set forth in this Agreement. However, the terms of this Agreement govern over any inconsistent terms and can only be changed by a subsequent written agreement signed by an authorized officer of the Company.

8.    I agree that my obligations shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is

2

MAR-31-2006 FRI 12:28 PM CASTRIP          FAX NO. 765 361 5733          P. 03

voluntary or involuntary on my part, and that Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of Company, it subsidiaries, successors and assigns.

9.    Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of Indiana without regard to the conflict of laws provisions thereof. I further agree that if one or more provisions of this Agreement are held to illegal or unenforceable, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms. If any provision of this Agreement shall be deemed by a court to be unreasonable, the court shall vary and enforce that provision in time duration, geographic scope and employment scope to the extent the court shall then find is reasonable for protection of the business interest of the Company, its successors, its affiliates and Castrip LLC and its licensees. I also understand that any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies.

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, IN DUPLICATE, WITH THE UNDERSTANDING THAT ONE COUNTERPART WILL BE RETAINED BY COMPANY AND THE OTHER COUNTERPART WILL BE RETAINED BY ME.

October 29, 2005

[Employee]

_____
Signature

JOHN F. BELL
Name (Printed)

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
SSN # or Driver's License #

Accepted and Agreed to:

Nucor Corporation

By _____

3

# NUCOR

## CORPORATE OFFICE

March 31, 2006

Mr. John Bell
3234 Pignatelli Crescent
Mount Pleasant, SC 29466

Re:    Termination of Employment

Dear John:

You have advised Nucor Corporation ("Nucor") that effective today you have ceased employment with Nucor. In connection with your departure, we wish to remind you of your contractual and statutory obligations to Nucor not to use or disclose Nucor's confidential and proprietary information, as well as not to solicit employees and consultants of Nucor to leave Nucor for any reason.

In the course of your employment with Nucor, you have been made aware of significant confidential and proprietary information of Nucor, including plant and equipment design, specification and layout, product designs, manufacturing processes and methodologies, proprietary technologies, research and development projects, marketing, pricing, costs, formulations, confidential information regarding Nucor's customers including their requirements and confidential information regarding Nucor's employees and compensation ("Nucor's Confidential Information and Trade Secrets"). As you also know from your employment with Nucor, Nucor considers this information to be confidential and proprietary to it. It is for this reason that you were required to sign confidentiality agreements with Nucor, which I enclose with this letter. In those confidentiality agreements, you acknowledge that Nucor has confidential and proprietary information which is being made available to you in connection with your employment with Nucor and agree that you will not use or disclose Nucor's Confidential Information and Trade Secrets in the future.

As you also know from your employment with Nucor, Nucor is protective of its Confidential Information and Trade Secrets and will take appropriate steps to protect that information from improper use or disclosure. Nucor fully expects you to live up to your contractual and statutory obligations not to use or disclose Nucor's Confidential Information and Trade Secrets. Nucor believes that given the nature of the confidential information that you were aware of and personally involved with during your near twenty years of employment at Nucor, if you were to obtain employment in a similar capacity with another steel manufacturing company you will inevitably disclose Nucor's Confidential Information and Trade Secrets. In such a situation, Nucor will take appropriate action, as deemed necessary, to protect this information from improper use or disclosure.

Sincerely yours,

Douglas R. Gunson

cc:    Daniel R. DiMicco, President, CEO, and Vice Chairman
John Ferriola, Executive Vice President
Ladd Hall, Vice President & General Manager

2100 REXFORD ROAD, CHARLOTTE, NORTH CAROLINA 28211  PHONE 704 366 7000  FAX 704 362 4208

## CHECK LIST EXIT INTERVIEW FOR DEPARTING EMPLOYEE JOHN BELL

✓ 4/3/06  Employee has returned company laptop and software provided to him.

✓ 4/1/06  Employee has returned company cell phone.

✓ 4/3/06  Employee has returned company keys.

✓ 4/3/06  Employee has returned company parking pass. NUB

✓ 4/3/06  Employee has returned company identification and building access card.

✓ 4/1/06  Employee has been advised of continuing obligation not to disclose or use confidential or proprietary information of Nucor, including but not limited to, information concerning Nucor's processes, techniques, methodologies, formulations, proprietary technologies, costs, pricing, customer requirements and specifications, employee relationships and compensation.

✓ 4/1/06  Employee has been reminded of his confidentiality agreement entered into with Nucor and was provided a copy of the same.

✓ 4/1/06  Employee was reminded that Nucor considers its longstanding relationship with its employees and customers to be important assets to the company and have been and will continue to be protected by Nucor.

✓ 4/3/06  Employee has provided written or oral updates on all in-progress work assignments. —to Marocchi' + Sumoski'

✓ 4/1/06  Employee has been advised of anticipated date of final paycheck.

✓ 4/11/06  Employee has been advised that COBRA letter will be sent to him.

✓ 4/3/06  Interviewer has documented results of exit interview.

EXIT INTERVIEWER: _Michael Forkell_ DATE: _4/1/06_

DEPARTING EMPLOYEE SIGNATURE: _John Bell_ DATE: _4/1/06_

CLT 947436v1

STATE OF SOUTH CAROLINA
COUNTY OF <u>CHARLESTON</u>

IN THE  ☒ COURT OF COMMON PLEAS
　　　　☐ FAMILY COURT

<u>NUCOR CORPORATION</u>
☒ Plaintiff

v.

<u>JOHN WELL and SEVERCORR</u>
☐ Defendant
**check box above indicating submitting party**

)
)
)
)
)
)
)
)
)
)
)

CASE NO.

<u>06</u>-CP-<u>10</u>-<u>3954</u>

**MOTION INFORMATION FORM
AND COVER SHEET**

| <u>name, S.C. Bar no. and address of plaintiff's attorney</u> | <u>name, S.C. Bar no. and address of defendant's attorney</u> |
|---|---|
| J. Walker Coleman, IV<br>S.C. Bar No. 66196<br>Email:  walkercoleman@parkerpoe.com<br>J. W. Nelson Chandler<br>S.C. Bar No. 68625<br>Email: nelsonchandler@parkerpoe.com<br>PARKER POE ADAMS & BERNSTEIN LLP<br>200 Meeting Street, Suite 301<br>Charleston, SC  29401<br><br>OF COUNSEL:<br>William L. Rikard, Jr.<br>N.C. Bar No. 3701<br>Email:  williamrikard@parkerpoe.com<br>Eric D. Welsh<br>N.C. Bar No. 29629<br>Email:  ericwelsh@parkerpoe.com<br>PARKER POE ADAMS & BERNSTEIN LLP<br>Three Wachovia Center<br>401 South Tryon Street, Suite 3000<br>Charlotte, NC  28202<br>telephone:  843-727-2650    fax:  843-727-2680<br>email:              other: | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>telephone:          fax:<br>email:          other: |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ **FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**

**SECTION I: Hearing Information**

Nature of Motion:  <u>MOTION FOR PRELIMINARY INJUNCTION</u>
Estimated Time Needed: <u>30 MIN</u>          Court Reporter Needed:  ☒ YES    ☐ NO

**SECTION II: Motion Type**

☒ Written motion attached
☐ Form Motion --
　　　I hereby move for relief or action by the court as set forth in the attached proposed order.

<br>

_____          _____
Signature of Attorney for Plaintiff / Defendant          Date Submitted

**SECTION III: Motion Fee**

☒ PAID – AMOUNT: <u>$25.00</u>
☐ EXEMPT:　　☐ Rule to Show Cause in Child or Spousal Support
(check reason)　☐ Domestic Abuse or Abuse and Neglect
　　　　　　　☐ Indigent Status　　☐ State Agency v. Indigent Party
　　　　　　　☐ Sexually Violent Predator Act　　☐ Post-Conviction Relief
　　　　　　　☐ Motion for Stay in Bankruptcy
　　　　　　　☐ Motion for Publication　　☐ Motion for Execution (Rule 69, SCRCP)
　　　　　　　☐ Proposed order submitted at request of the court; or,

reduced to writing from motion made in open court per judge's instructions

Name of Court Reporter: _____

☐ Other:

| | |
|---|---|
| **JUDGE'S SECTION**<br>☐ Motion Fee to be paid upon filing of the attached order.<br>☐ Other: | _____<br>JUDGE<br><br>CODE: _____ Date: _____ |

**CLERK'S VERIFICATION**

Collected by: _____          <u>DATE FILED</u>

      (print name)

☐ MOTION FEE COLLECTED: _____

☐ CONTESTED – AMOUNT DUE:_____

SCCA/233 (1/2003)

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br><br>COUNTY OF CHARLESTON )<br><br>NUCOR CORPORATION )<br>Plaintiff(s) )<br><br>vs. )<br><br>JOHN BELL and SEVERCORR )<br>Defendant(s) ) | IN THE COURT OF COMMON PLEAS<br><br>CIVIL ACTION COVERSHEET<br><br>06 - CP - _10_ - _3954_ |

| | |
|---|---|
| (Please Print)<br>Submitted By:J. Walker Coleman, IV<br>Address: Parker Poe Adams & Bernstein LLP<br>200 Meeting Street, Suite 301<br>Charleston, SC  29401 | SC Bar #:      66196<br>Telephone #:  843-727-2650<br>Fax #:           843-727-2680<br>Other:<br>E-mail:         walkercoleman@parkerpoe.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law.  This form is required for the use of the Clerk of Court for the purpose of docketing.  It must be filled out completely, signed, and dated.  A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
### *If Action is Judgment/Settlement do not complete*

- [X] **JURY TRIAL** demanded in complaint.          [ ] **NON-JURY TRIAL** demanded in complaint.
- [ ] This case is subject to **ARBITRATION** pursuant to the Circuit Court Alternative Dispute Resolution Rules.
- [ ] This case is subject to **MEDIATION** pursuant to the Circuit Court Alternative Dispute Resolution Rules.
- [ ] This case is exempt from ADR (certificate attached).

## NATURE OF ACTION  *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| [ ] Construction (100) | [ ] Dental Malpractice (200) | [ ] Assault/Slander/Libel (300) | [ ] Claim & Delivery (400) |
| [ ] Debt Collection (110) | [ ] Legal Malpractice (210) | [ ] Conversion (310) | [ ] Condemnation (410) |
| [X] Employment (120) | [ ] Medical Malpractice (220) | [ ] Motor Vehicle Accident (320) | [ ] Foreclosure (420) |
| [ ] General (130) | [ ] Other (299) | [ ] Premises Liability (330) | [ ] Mechanic's Lien (430) |
| [X] Breach of Contract (140) | | [ ] Products Liability (340) | [ ] Partition (440) |
| [ ] Other (199) | | [ ] Personal Injury (350) | [ ] Possession (450) |
| | | [ ] Other (399) | [ ] Building Code Violation (460) |
| | | | [ ] Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| [ ] PCR (500) | [ ] Death Settlement (700) | [ ] Reinstate Driver's License (800) | [ ] Arbitration (900) |
| [ ] Sexual Predator (510) | [ ] Foreign Judgment (710) | [ ] Judicial Review (810) | [ ] Magistrate-Civil (910) |
| [ ] Mandamus (520) | [ ] Magistrate's Judgment (720) | [ ] Relief (820) | [ ] Magistrate-Criminal  (920) |
| [ ] Habeas Corpus (530) | [ ] Minor Settlement (730) | [ ] Permanent Injunction (830) | [ ] Municipal (930) |
| [ ] Other (599) | [ ] Transcript Judgment (740) | [ ] Forfeiture (840) | [ ] Probate Court (940) |
| | [ ] Lis Pendens (750)** | [ ] Other (899) | [ ] SCDOT (950) |
| | [ ] Other (799) | | [ ] Worker's Comp (960) |
| | | | [ ] Zoning Board (970) |
| | | | [ ] Administrative Law Judge (980) |
| | | | [ ] Public Service Commission (990) |
| | | | [ ] Employment Security Comm (991) |
| | | | [ ] Other (999) |

| Special/Complex/Other | | |
|---|---|---|
| [ ] Environmental (600) | [ ] Pharmaceuticals (630) | |
| [ ] Automobile Arb. (610) | [X] Unfair Trade Practices (640) | |
| [ ] Medical (620) | [ ] Other (699) | |
| | Trade Secret Misappropriation | |

**Submitting Party Signature:** _[signature]_          Date:  October **6**, 2006

SCCA / 234 (5/04)
CLT 990382v1                                                                        Page 1 of 2

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

## *FOR MANDATED ADR COUNTIES ONLY
Florence, Horry, Lexington, Richland, Greenville**, and Anderson**
** Contact Respective County Clerk of Court for modified ADR Program Rules

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral within 210 days of filing of this action, and the Plaintiff shall file a "Stipulation of Neutral Selection" on or before the 224th day after the filing of the action. If the parties cannot agree upon the selection of the neutral within 210 days, the Plaintiff shall notify the Court by filing a written "Request for the Appointment of a Neutral" on or before the 224th day after the filing of this action. The Court shall then appoint a neutral from the Court-approved mediator/arbitrator list.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Case are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Cases which are appellate in nature such as appeals or writs of certiorari;

   c. Post Conviction relief matters;

   d. Contempt of Court proceedings;

   e. Forfeiture proceedings brought by the State;

   f. Cases involving mortgage foreclosures; and

   g. Cases that have been submitted to mediation with a certified mediator prior to the filing of this action.

4. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference had been concluded.

**Please Note:**   **You must comply with the Supreme Court Rules regarding ADR.**
   **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA  )  IN THE COURT OF COMMON PLEAS
            )
COUNTY OF CHARLESTON   )  NINTH JUDICIAL CIRCUIT

NUCOR CORPORATION,    )  Case No. Qo·CP·lO·3954
            )
    Plaintiff,     )
            )  AFFIDAVIT OF THAD SOLOMON
v.            )
            )
JOHN BELL and SEVERCORR,   )
            )
    Defendants.    )
_____)

**THAD SOLOMON**, being first duly sworn, deposes and says:

1. I am Thad Solomon of Nucor Corporation ("Nucor"). I am over the age of 18 years and am competent to make this affidavit. I make this affidavit upon personal knowledge of the content therein.

2. I have been employed by Nucor for 10 years. From May 2000 to June 2006, I was the hotmill manager at Nucor's mini-mill facility located in Berkeley County, South Carolina ("Nucor Berkeley"). In that position with Nucor, I worked with and became familiar with Tony Gurley ("Gurley"). Gurley, during my employment at Nucor Berkeley, was employed in the melt shop in the mill as a Melt Shop Supervisor and as a Day Melter.

3. I am currently involved in efforts at Nucor to open a new mini-mill facility which has not yet been sited. In connection with those responsibilities, I have interviewed a number of prospective candidates for positions at this new facility. One of those candidates that I had interviewed was Gurley.

4. In or about July 2006, Gurley submitted an application to Nucor for the position of melt shop manager of this new mini-mill facility. Following his application, I had several

conversations with Gurley about that application, including an interview of him at Nucor Berkeley. Many other potential candidates submitted applications for the melt shop manager position. As of Friday, September 22, 2006, I had made no decision regarding this position and Gurley's application remained pending.

5.    On Friday, September 22, 2006, I received a telephone call from Gurley. Gurley asked what the status of his application was for the new position at Nucor. Gurley told me during this conversation that he had been offered a position as melt shop manager at SeverCorr by John Bell. Gurley also told me that he had been offered stock in SeverCorr as part of his compensation. Gurley told me that had made a commitment to get back to Bell later that day with his response to the offer.

6.    I responded to Gurley's statements during this conversation by telling him that he was the top applicant for the position but that a decision had not yet been made. I asked him to not make the decision until the following Monday so that further consideration of his application could be given by Nucor. I told him he should just tell John that he needed until Monday to decide on his offer. I also asked Gurley to contact me again before he made any decisions with respect to John's offer.

7.    During my conversation on September 22, Gurley never mentioned any name at SeverCorr other than that of John Bell.

8.    On September 25 I came to understand that Gurley had resigned from Nucor for a position at SeverCorr.

Further affiant sayeth not.

2

CLT 989275v1

Thad Solomon

STATE OF _Tennessee_

COUNTY OF _Shelby_

I, _Ralph McGhee_, a Notary Public of _Shelby_ County, State of _TN._, do hereby certify that Thad Solomon personally appeared before me this day and acknowledged the execution of the forgoing instrument.

    Witness my hand and seal, this _3_ day of October, 2006.

Notary Public

MY COMMISSION EXPIRES:
July 27, 2010

My Commission Expires:

[NOTARY SEAL]



CLT 989275v1

FILED

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS

2006 OCT 11 )PM 1:54

COUNTY OF CHARLESTON            )     NINTH JUDICIAL CIRCUIT

JULIE J. ARMSTRONG
CLERK OF COURT

NUCOR CORPORATION,             )     Case No. 06 CP 10-3954

BY_____ )

      Plaintiff,                    )

                                )     **AFFIDAVIT OF**

vs.                            )     **MELEAH B. REYNOLDS**

                                )

JOHN BELL and SEVERCORR, LLC,  )

      Defendants.                   )

_____)

**MELEAH B. REYNOLDS**, being first duly sworn, deposes and says:

1.      I am the human resource supervisor for Nucor Corporation's facility located in Berkeley County, South Carolina ("Nucor Berkeley"). I have been employed by Nucor since June 1, 1999 and have held my current position since October 22, 2000. My maiden name was Meleah L. Barnhill. I am over the age of eighteen years and make this affidavit upon personal knowledge of its content therein.

**Bell's Termination from Nucor**

2.      On March 31, 2006, John Bell terminated his employment at Nucor Berkeley. On April 1, 2006, I met with Mr. Bell in his office at the Berkeley facility to conduct an exit interview. Mr. Bell had a desktop computer located in his office at that time. My meeting with Mr. Bell lasted approximately 15 minutes.

3.      During my meeting with Mr. Bell on April 1, 2006, Mr. Bell accessed the computer in his office in my presence. At that time, Mr. Bell told me that he was only deleting information that was personal to him. He briefly showed me some examples of what he was deleting, including files regarding his Saturn automobile and information regarding an accident involving his daughter. Mr. Bell told me he was not deleting Nucor information, only personal

CLT 991948v1

information, in attempt to reassure me that no inappropriate activity was occurring. Mr. Bell's explanation and demonstration of what he was doing on the computer took less than five minutes.

4.      During my meetings with Mr. Bell, he neither mentioned to me nor asked whether he could burn any CD's from his computer or export files to any USB device.

### Stanley Smith's Termination from Nucor

5.      On Friday, October 6, 2006, Stanley W. Smith ("Smith") terminated his employment at Nucor Berkeley. Mr. Smith was the caster mechanical supervisor at Nucor Berkeley for approximately the last 8 months. Prior to that time, Mr. Smith had been employed at Nucor Berkeley in the position of mechanical supervisor in the melt shop area. Mr. Smith had been employed by Nucor since April 1996.

6.      On October 6, I conducted an exit interview with Mr. Smith. During the exit interview with Mr. Smith, Mr. Smith commented to me that he had contacted Mr. Bell on March 31 after learning of his departure and told him that he was interested in working for him in the future and do another startup of a steel company. Mr. Smith advised me that he has accepted a position at SeverCorr as a mechanical supervisor.

Further affiant sayeth not.

*Meleah B. Reynolds.*

Meleah B. Reynolds

CLT 991948v1

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

On the ___10th___ day of October, before me personally came Meleah B. Reynolds, to me known, who, being by me duly sworn, did depose and say that she executed, and did execute, the foregoing affidavit under oath.


Sworn before me this
___10th___ day of October, 2006.

My Commission Expires:

_My Commission Expires November 20, 2008_
_____
Notary Public

_Linda M Starr_
Print Name

[NOTARY SEAL]

3

**AFFIDAVIT OF JOHN E. JORGENSEN
FILED UNDER SEAL IN THE STATE COURT ACTION
WITH ATTACHED DOCUMENTS MARKED
"RESTRICTED CONFIDENTIAL"
PURSUANT TO THE CONFIDENTIALITY ORDER**